Donald M. Cislo, Esq., No. 49,203
   *doncislo@cislo.com*
Daniel M. Cislo, Esq., No. 125,378
   *dan@cislo.com*
Mark D. Nielsen, Esq., No. 210,023
   *mnielsen@cislo.com*
CISLO & THOMAS LLP
12100 Wilshire Blvd., Suite 1700
Los Angeles, CA 90025
Telephone: (310) 451-0647
Telefax: (310) 394-4477

Attorneys for Plaintiff,
MEDICAL CHEMICAL CORPORATION.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEDICAL CHEMICAL CORPORATION, a New York corporation,<br><br>         Plaintiff,<br><br>   vs.<br><br>VWR INTERNATIONAL, LLC, a Delaware limited liability company, APACOR, LTD., a business entity organized under the laws of Great Britain, and DOES 1-9, inclusive,<br><br>         Defendants. | Case No.:<br><br>**COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**[JURY DEMAND]** |

For its Complaint, Plaintiff Medical Chemical Corporation alleges as follows:

## PARTIES

1. Plaintiff Medical Chemical Corporation ("Plaintiff" or "MCC") is a corporation organized under the laws of the State of New York, with its principal place of business at 19430 Van Ness Avenue, Torrance, California 90501-1104. Plaintiff's products are sold and offered for sale throughout the United States, including in this judicial district.

2. Defendant VWR International, Inc. ("VWR") is a Delaware limited liability company believed to have a business address of Radnor Corporate Center, Building One, Suite 200, 100 Matsonford Road, Radnor, Pennsylvania 19087.

3. Defendant Apacor, Ltd. ("Apacor") is a business entity organized under the laws of Great Britain, with a business address of Unit 5 Sapphire Centre, Fishponds Road, Wokingham, Berkshire RG4 12 QL, England. Apacor has a U.S. sales contact with a telephone number of (619) 376-0146.

4. At the present time, the relationship, if any, between VWR and other VWR entities (e.g., VWR International, Inc.) is unclear, as is the relationship with either of these entities with other VWR entities, of which there are many, in terms of conducting the activities described herein. Plaintiff reserves the right to amend this complaint, if necessary, once discovery clarifies which particular VWR entities are responsible for the acts alleged herein.

5. Unless singularly referenced, or unless context dictates otherwise, VWR LLC, and Apacor shall be herein collectively referred to as "Defendants."

6. The true names and capacities, whether individual, corporate, or otherwise of Defendants Does 1-9 inclusive, are unknown to Plaintiff, who therefore sues them by such fictitious names. Plaintiff will seek leave to amend this complaint to allege their true names and capacities when they have been

ascertained. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged. At all times herein mentioned, Defendants Does 1-9 inclusive were the agents, servants, employees or attorneys of their co-defendants, and in doing the things hereinafter alleged were acting within the course and scope of their authority as those agents, servants, employees or attorneys, and with the permission and consent of their co-defendants.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1338(a) as it arises under Acts of Congress related to patents.

8. This Court has personal jurisdiction over Defendant VWR in that it engages in continuous and systematic business activities in this judicial district, including having multiple active sales representatives for its products in this judicial district, offering its accused products described herein for sale in this judicial district, and selling products in this judicial district. VWR is believed to distribute thousands of its catalogs to customers or potential customers for its products in California, including in this judicial district. In addition, VWR is registered with the California Secretary of State to conduct business in California. Plaintiff believes VWR is subject to general jurisdiction in this judicial district. Furthermore, however, VWR, on information and belief, regularly sells and distributes the accused products described herein in this judicial district.

9. This Court has personal jurisdiction over Defendant Apacor in that Apacor causes the accused products described herein to be imported into the United States, including into this judicial district. By importing its products into the United States and distributing them through VWR, a company known to conduct business throughout the United States, Apacor, on information and belief, placed its

accused products described herein into the stream of commerce knowing that they would be sold and distributed in this judicial district.

10. With respect to the accused products described herein, and the use and distribution thereof, Apacor and VWR's activities are inextricably intertwined such that Apacor is knowledgable of VWR's sale and distribution of the accused products described herein and uses thereof, including with respect to this judicial district.

11. Defendants, on information and belief, were at all relevant times herein, aware of Plaintiff's patented product, "Total-Fix," and knew that Plaintiff is a company based in this judicial district, such that Defendants knew that their importation, offering to sell, and selling of the accused products described herein would substantially injure a company based in this judicial district.

12. Venue is proper in this judicial district as to Defendants pursuant to 28 U.S.C. § 1391(b)(2) and § 1391(c) in that Defendants are subject to personal jurisdiction in this judicial district, and at least a substantial portion of the acts and omissions giving rise to the asserted claims occurred, or were known to have injurious effects on a company known by Defendants to be based in this judicial district, namely Plaintiff.

## FACTUAL ALLEGATIONS

13. Andrew J. Rocha invented a "Universal Fecal Fixative" composition that possessed significant advantages over prior fecal fixative protocols. Mr. Rocha assigned his rights in the invention to Plaintiff, which applied for a patent on the Universal Fecal Fixative on February 25, 2011. That application resulted in U.S. Patent No. 8,338,130, which issued on December 25, 2012 (the "'130 patent"). Said patent is attached hereto as **Exhibit 1**. The patent was duly and legally issued to Plaintiff, as assignee.

14. Defendant Apacor manufactures a composition known as "Alcorfix"

4

that is believed to be within the scope of one or more claims of the '130 Patent. Attached hereto as **Exhibit 2** is a Safety Datasheet for Alcorfix. According to the Safety Datasheet, Alcorfix contains 25% ethanol, 7.9% zinc sulfate, 4.8% acetic acid, 1% isopropanol, and 1% methyl alcohol. Additional testing has confirmed that the composition is otherwise comprised of water, lacks polyvinyl alcohol, and has a pH of approximately 2.9.

15. By way of example only, and without waiving any right to assert infringement of any other claim of the '130 Patent either directly or indirectly, the following table includes the independent claims in the '130 Patent compared to the contents of Alcofix:

| '130 PATENT CLAIMS | ALCORFIX |
|---|---|
| 1. A mercury-free, formaldehyde-free and polyvinyl alcohol-free universal fixative composition for preserving a fecal sample, said universal fixative consisting essentially of one or more low molecular weight alcohols; zinc sulfate; acetic acid; and water. | Alcorfix is mercury-free, formaldehyde-free, and polyvinyl alcohol-free composition for preserving a fecal sample.<br><br>Alcorfix consists essentially of: ethanol, isopropanol, and methyl alcohol, each of which are low molecular weight alcohols, zinc sulfate, acetic acid, and water. |
| 8. A mercury-free, formaldehyde-free and polyvinyl alcohol-free universal fixative composition for preserving a fecal sample, said universal fixative consisting essentially of:<br>a. one or more low molecular weight | Alcorfix is mercury-free, formaldehyde-free, and polyvinyl alcohol-free composition for preserving a fecal sample.<br><br>Alcorfix consists essentially of: ethanol, isopropanol, and methyl alcohol, each of which have molecular weights between |

| | |
|---|---|
| alcohols having a molecular weight between about 30 and about 65 Daltons, the total amount of low molecular weight alcohols being in an amount of from about 20% to about 35% of the total volume of the universal fixative;<br><br>b. about 1% to about 10% w/v of zinc sulfate;<br><br>c. acetic acid; and<br><br>d. water;<br><br>wherein the acetic acid is added in an amount sufficient to adjust the pH of the universal fixative composition to a range from about pH 3 to about pH 5 | about 30-65 Daltons, and are present in an amount from 20-35% of Alcorfix by volume;<br><br>7.9% zinc sulfate;<br><br>4.8% acetic acid; and<br><br>Water.<br><br>The pH of Alcorfix is 2.9, which literally or equivalently "about" 3. |
| 12. A method for preserving fecal specimens, said method comprising the step of contacting a fecal specimen with an amount of a parasitological fixative effective for preserving the fecal specimen, said parasitological fixative consisting essentially of one or more low molecular weight alcohols; zinc sulfate; acetic acid; and water | VWR's customers using Alcorfix to fix fecal specimens are directly infringing this claim (and thus, Defendants are indirectly infringing this claim) inasmuch as VWR's customers are contacting a fecal specimen with a fixative (Alcorfix) that consists essentially of: ethanol, isopropanol, and methyl alcohol, each of which are low molecular weight alcohols, zinc sulfate, acetic acid, and water.<br><br>VWR's website contains a web page for |

6

| | |
|---|---|
| | Parasep® Fecal Parasite Concentrators, Apacor (https://us.vwr.com/store/catalog/product.jsp?catalog_number=10796-702), which states: "We have many users of our Parasep methodology in the US …" |

16. On information and belief, Apacor manufactures, or has manufactured for it, Alcorfix, and/or fecal testing products or kits containing Alcorfix as a component of such fecal testing products or kits, in the United Kingdom.

17. On information and belief, Apacor imports into the U.S., or causes to be imported into the U.S., Alcorfix, and/or fecal testing products containing Alcorfix.

18. VWR is Apacor's U.S. distributor of Alcorfix, and fecal testing products containing Alcorfix. Attached hereto as **Exhibit 3** is a printout of a page from Apacor's website indicating that VWR is Apacor's U.S. distributor. Attached hereto as **Exhibit 4** are printouts of pages from VWR's website offering for sale Alcorfix and other products containing Alcorfix and/or pages describing Alcorfix and its composition and intended use. Attached hereto as **Exhibits 5-11** are additional printouts of pages on or linked to VWR's or Apacor's websites concerning Alcorfix, fecal testing products containing Alcorfix, and uses thereof.

19. The products (hereafter the "Accused Products") presently known to Plaintiff that appear to infringe the '130 Patent (by containing Alcorfix), include, but may not be limited to the following (as set forth on VWR's website at https://us.vwr.com/store/catalog/ product.jsp?catalog_number=10796-702) (see **Exhibit 4**, attached hereto):

7

**Parasep Solvent-Free System**:

| Capacity | Supplier No. | Format | Includes | VWR Catalog No. |
|---|---|---|---|---|
| 15 mL | 248300 | Mini | Pre-Dispensed with 3.3 mL AlcorFix | 10183-860 |
| 50 mL | 149995 | Midi | 15 packs containing 1 x 8 mL AlcorFix | 10147-167 |

**Transport Vials**:

| Capacity | Supplier No. | Includes | VWR Catalog No. |
|---|---|---|---|
| 30 mL | 249420 | Pre-Dispensed with AlcorFix | 10184-190 |

**Dual Vial Solvent-Free System**:

| Capacity | Supplier No. | Format | Includes | VWR Catalog No. |
|---|---|---|---|---|
| 15 mL | 248320 | Mini | 15 packs containing 1 x 3.3 mL AlcorFix, 1x Clean | 10183-876 |
| 50 mL | 249320 | Midi | 15 packs containing 1 x 8 mL AlcorFix, 1x Clean | 10183-868 |

20. VWR LLC is believed to sell products, including the Accused Products, to medical clinics, medical diagnostic laboratories, university laboratories, and the like. It is these end users who are infringing claim 12 of the '130 Patent and potentially its dependents, by placing a fecal specimen in contact with Alcorfix. VWR and Apacor are contributing to and/or inducing the infringement of claim 12 of the '130 Patent and potentially its dependents by touting, or having touted for them, the benefits of Alcorfix in connection with fecal

specimen testing, by providing detailed instructions and promotional information to end users on the use of Alcorfix in fecal specimen testing, and by actively promoting and selling Alcorfix at trade shows and through sales representatives.

21. The involvement of other VWR entities in the distribution and sales of infringing products is presently unknown, but Plaintiff reserves the right to amend this complaint if it becomes known that other VWR entities were involved in the infringing activities.

22. Plaintiff has not licensed or otherwise authorized Apacor or VWR (or its dealers, customers, affiliates, or the like) to deal in a composition that is within the scope of one or more claims of the '130 Patent, including the Accused Products. In other words, the making, using, importing, offering to sell, and/or selling of the Accused Products by Defendants (or its dealers, customers, affiliates, or the like) is unauthorized.

23. Defendants' infringement of Plaintiff's '130 Patent is willful. Plaintiff has advertised and publicized its novel, patented fecal specimen fixative at all relevant times herein, including on its website at http://www.med-chem.com/ and http://med-chem.com/index.php?url=products&subsection=parasitology&product=total-fix and elsewhere. The ARUP reference laboratory, which Defendants tout as being a collaborator with them in connection with Alcorfix and fecal testing kits containing Alcorfix (see **Exhibit 4**, attached hereto, which is a printout from VWR's website – "Apacor is proud to confirm that our collaborators in the US are ARUP with whom we have improved our reagents and procedure further still"), had specific knowledge of Plaintiff's novel fixative because Plaintiff provided ARUP with samples of "Total-Fix" marked with the '130 Patent number in approximately February of 2014. Thus, Defendants and their collaborator, ARUP, have known about Plaintiff's novel fixative and the '130 Patent at all relevant times herein.

24. For all of these reasons, Defendants are liable for money damages pursuant to 35 U.S.C. § 284 to Plaintiff. In addition, Defendants must be deterred

from any further violations of Plaintiff's rights in the '130 Patent through a permanent injunction. Defendants should also be required to pay Plaintiff's attorneys' fees, expenses, and costs for its willful and blatant disregard of Plaintiff's patent rights.

## COUNT I –PATENT INFRINGEMENT
## 35 U.S.C. §§ 101 ET SEQ.

25. Plaintiff hereby repeats and incorporates herein the allegations set forth in paragraphs 1 through 24 above.

26. Plaintiff's '130 Patent (see, **Exhibit 1** attached hereto) has at all relevant times subsequent to its issue date been fully enforceable and is now fully enforceable.

27. Plaintiff, at all relevant times herein, has marked its patented product and literature related thereto with the '130 Patent number.

28. Subsequent to the issuance of the '130 Patent, Defendants have infringed the '130 Patent by making, using, importing, offering to sell, and/or selling, and continuing to make, use, import, offer to sell and/or sell products that come within the scope of at least one claim of the '130 Patent, and/or that come within a range of equivalents of at least one claim of the '130 Patent, and/or contributing to the infringing activities of others in the form of their use of Alcorfix, or fecal testing products containing Alcorfix.

29. The making, using, importing, offering to sell, and/or selling of the Accused Products by Defendants, and/or contributing to the infringing activities of others, has been without authority or license from Plaintiff and is in violation of Plaintiff's rights under the '130 Patent, thereby infringing the '130 Patent.

30. For the reasons stated elsewhere herein, Defendants' infringement of Plaintiff's '130 Patent has been, and is, willful, with knowledge of, and in disregard for the exclusive rights of Plaintiff set forth in its patent.

10

31. The amount of money damages due Plaintiff as a result of Defendants' infringing acts will be determined according to proof at trial, with Plaintiff being entitled to damages adequate to compensate it for the infringements, but in no event less than a reasonable royalty.

32. The harm to Plaintiff arising from Defendants' acts of infringement of Plaintiff's '130 Patent is not fully compensable by money damages. Rather, Plaintiff has suffered and continues to suffer irreparable harm which has no adequate remedy at law and which will continue unless Defendants' conduct is enjoined.

33. Plaintiff is therefore also entitled to a preliminary injunction, to be made permanent on entry of the judgment, preventing Defendants from further acts of infringement.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants, as follows:

A. A finding that Defendants have directly and/or indirectly infringed the '130 Patent.

B. For an order preliminarily and permanently enjoining Defendants, and their officers, directors, agents, servants, attorneys, affiliates, and employees and all other persons acting in concert with them from committing any further acts of infringement, including but not limited to, manufacturing, using, importing, offering to sell, and selling the Accused Products (or products colorably similar thereto), or aiding or abetting or assisting others in such infringing activities;

C. For an order directing Defendants to file with this Court and to serve on Plaintiff within thirty (30) days after service on Defendants of the injunction granted herein, or such extended period as the Court may direct, a report in writing, under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction and order of the Court;

D.  For an order seizing and impounding all Accused Products, including those en route to the U.S. from VWR's overseas supplier(s), Apacor;

E.  For a judgment to be entered for Plaintiff against Defendants awarding damages adequate to compensate Plaintiff for the infringement, but in no event less than a reasonable royalty;

F.  For a judgment awarding to Plaintiff prejudgment and postjudgment interest until the award is fully paid;

G.  For a judgment that Defendants have willfully and deliberately infringed Plaintiff's patent rights, such that it is determined that this is an exceptional case entitling Plaintiff to enhanced damages under the Patent Laws of the United States;

H.  For an award to Plaintiff of costs, expenses, and attorneys' fees, incurred in bringing this action under the Patent Laws of the United States; and,

I.  For such other and further relief as this Court may deem just and equitable under the circumstances.

Respectfully submitted:
CISLO & THOMAS LLP

Dated: October 30, 2015         By:     /s/Daniel M. Cislo
                                        Donald M. Cislo, Esq.
                                        Daniel M. Cislo, Esq.
                                        Mark D. Nielsen, Esq.
                                        Attorneys for Plaintiff,
                                        MEDICAL CHEMICAL
                                        CORPORATION

T:\15-30928\Complaint for Patent Infringement 1.docx

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues raised by the Complaint so triable.

Respectfully submitted:
CISLO & THOMAS LLP

Dated: October 30, 2015        By:        /s/Daniel M. Cislo
Donald M. Cislo, Esq.
Daniel M. Cislo, Esq.
Mark D. Nielsen, Esq.
Attorneys for Plaintiff,
MEDICAL CHEMICAL CORPORATION

13